## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HAMPTON GARDENS ASSOCIATES** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **NO. 16-323** |
| **KEARNY BANK** | : | |

### MEMORANDUM

**KEARNEY, J.**                                                              **JUNE 29, 2016**

Lenders refinancing multi-million dollar commercial real estate loans often issue loan commitment letters outlining the loan terms. The loan commitment letters typically recite they are outlines and its terms are subject to change in the governing loan documents delivered later. When a commercial developer signs a commitment letter without deleting the lender's typical protections of incorporating the loan's standard terms in the commitment letter, or otherwise ensuring the commitment letter's terms govern regardless of the terms in the later loan documents, the commercial developer borrower must usually choose to go forward with the loan or walk away and find another lender. Today, we address a commercial developer's tact of both walking away because it did not agree to the guarantor obligations in the later loan documents and then suing the lender arguing the guarantor obligations in the later loan documents breach the commitment letter or otherwise constitute fraud. By adding its standard terms as to guarantors in the loan documents, the lender is only doing what the commercial developer agreed it could do. Following discovery, we grant a lender's motion for summary judgment dismissing the commercial developer's claim after it agreed the loan documents, and not the commitment letter, define the guarantor obligations regardless of lawyer-negotiated terms in the commitment letter.

## I.  FACTUAL BACKGROUND[1]

Facing an upcoming balloon payment on a commercial loan secured by a mortgage on its 72-unit apartment complex, Plaintiff Hampton Garden Associates ("Developer") began seeking a $4 Million loan to refinance the $2.3 Million loan balance. With the equity, Developer sought an additional $1.7 Million for real estate investment.

Developer began negotiating through its counsel with Defendant Kearny Bank ("Bank") for the $4 Million loan.[2]  Developer agreed to find a guarantor for the $4 Million loan but wanted the lender to agree not to seek recovery against the guarantor.  Initial negotiations resulted in the Bank issuing a July 16, 2015 Commitment Letter (the "July 16 Commitment Letter").[3]  The July 16 Commitment Letter offered Developer the $4 Million loan without recourse to the offered guarantor but included several exceptions under which the guarantor could be personally liable (the "Non-Recourse Exclusions").[4]

Developer's lawyer promptly revised the July 16 Commitment Letter to, among other things, delete two of the Non-Recourse Exclusions: "(ii) gross negligence or willful misconduct of Borrower" and "(iv) [Borrower's] failure to use Loan proceeds to pay charges for labor or materials or other charges that can create Liens on any portion of the Mortgaged Premises."[5]

The Bank, through counsel, believed the parties could "move forward."[6]  The Developer emailed the Bank, "I think that we've agreed on all issues.  I'll mark up the Word version of the commitment you sent to me, and get a redline back to you for review."[7]  Developer then emailed a revised version of the July 16 Commitment Letter without the two deleted Non-Recourse Exclusions.[8]

2

### A.    The July 27, 2015 Commitment Letter

The Bank and Developer signed a commitment letter on July 27, 2015 (the "July 27 Commitment Letter").[9]   The July 27 Commitment Letter "approved a Four Million Dollar ($4,000,000) mortgage loan ("Loan") to [Developer]" and further provided:

> The Bank's approval of the Loan is subject to the following terms and conditions and such other requirements as the Bank or its attorney may specify.  This letter's purpose is to provide an outline of a proposed loan transaction and is not meant to address all issues, requirements, and or conditions which will be fully addressed in the actual loan documentation.  This commitment to lend is not assignable or transferrable.[10]

There is no evidence Developer or its counsel sought to negotiate this language notwithstanding their insistence on non-recourse language. The July 27 Commitment Letter also contained a "Survival of Closing" provision:

> The terms, provisions and conditions set forth herein, to the extent that the same are not contained in the final loan documents or have not been fully complied with by the time of disbursement by the Bank, shall survive the closing of the Loan.[11]

The parties also agreed, apparently without negotiation:

> To the extent there is any conflict or inconsistency between, the provisions of this commitment and those contained in the Bank's form loan documents (as the same may be negotiated by the parties' counsel and approved by the Bank), the provisions of the latter shall prevail; provided, however, that is the loan documents do not address a particular issue and this commitment does, it is not to be construed as a conflict between this commitment and the loan documents.[12]

The July 27 Commitment Letter required "the terms and provisions contained herein shall be construed in accordance with the laws of the State of New Jersey." [13]

### B.    The Loan Documents and subsequent negotiations

Two days later, the Bank emailed the draft loan documents to the Developer("Loan Documents").[14] The Loan Documents included an Indemnity Agreement and a Promissory Note

3

each with identical Non-Recourse Exclusions.[15]   Developer replied the next day with comments on "a couple of the loan documents", while the "others appear[ed] okay" to him.[16]   The Developer suggested revisions to only three (3) Non-Recourse Exclusions in the Promissory Note[17]:

- Recourse against the Guarantors in the event of waste committed at the Property or an act taken to materially reduce the value of the Property.[18]  Developer suggested adding the phrase "unless the Mortgaged Property has insufficient cash flow to support payment of proper maintenance and repairs".[19]

- Recourse against the Guarantors for failure to maintain casualty, liability, or any other type of insurance required by the Loan Documents.[20]  Developer suggested adding the phrase "unless the Mortgaged Property has insufficient cash flow to support payment of such insurance costs".[21]

- Recourse against the Guarantors if Developer fails to pay "real estate taxes, special assessments, insurance premiums, and other levies or assessments constituting a lien against all or a portion of the Mortgaged Property".[22]  Developer suggested adding the phrase "unless the Mortgaged Property has insufficient cash flow to support payment of such taxes."[23]

The Bank did not accept any of the Developer's suggested revisions to the Non-Recourse Exclusions in the draft Promissory Note.[24]

Several days later, on August 4, 2015, Developer emailed the Bank, "I just started going through the mortgage and there are a significant number of changes not made which we cannot possibly live without."[25]  The next day, Developer emailed revisions to the Promissory Note and Mortgage to the Bank: "I have attached a copy of my previous redline of the note and mortgage. I have highlighted the items where the bank has refused to make the requested changes, and

4

explained why these changes are needed. I think that all of these are business, rather than legal, issues."[26]  Developer's revisions copied the same revisions to the Non-Recourse Exclusions it previously requested but now the Developer explained its reasons for additional language: "not a 'bad boy' act" when the apartment building does not produce sufficient cash flow.[27]

On August 10, 2015, the Bank rejected the Developer's proposed revisions to the Non-Recourse Exclusions.[28]  The next day, Developer told the Bank's Vice President the Loan Documents' non-recourse exclusions went "beyond those disclosed in the [July 27 Commitment Letter], and took this loan from a non-recourse to a full recourse loan."[29]  Developer repeated it only wanted the language regarding the Property having insufficient cash flow and if the Bank could not accommodate its revisions, the Developer demanded the return of an initial deposit of $6,250 paid before the July 16 Commitment Letter and threatened a potential law suit to recover "all losses incurred as a result of the [B]ank's bad faith".[30]  The next day, Developer told the Bank it would seek financing elsewhere.[31]

### C.    Developer fulfills its threats.

True to its threat, Developer walked away, obtaining alternative financing from another bank.[32]    The second bank charged a 3.625% interest rate  as opposed to 3.375% charged by the Bank.[33]  Both loans contain an amortization rate of thirty (30) years and the interest rates "reset" in years 8-12.[34]

Developer then sued the Bank claiming "deceptive conduct, a classic 'bait and switch' deception" alleging the Bank induced the Developer to sign the July 27 Commitment Letter only to then include additional non-recourse exclusions in the Loan Documents not covered by the July 27 Commitment Letter.  Developer, out of pocket for less than this Court's requisite $75,000 amount in controversy, claims: common law fraud; violation of the New Jersey

Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*; breach of the July 27 Commitment Letter; breach of the duty of good faith and fair dealing[35]; and, unjust enrichment.

## II.     ANALYSIS

### A.     No breach of the enforceable July 27 Commitment Letter.

The Bank seeks summary judgment on Developer's breach of contract claim based on two arguments. First, the July 27 Commitment Letter is an unenforceable contract.  It argues the July 27 Commitment Letter is illusory because it, by negotiated terms, never bound Developer to any action, including signing loan documents and the parties agreed the July 27 Commitment Letter only outlined terms subject to the Loan Documents.[36]  Second, the Bank argues, even if the July 27 Commitment Letter is an enforceable contract, Developer failed to prove an actual breach.[37]  The Bank believes its conduct, introducing additional non-recourse exclusions in the Loan Documents, is entirely consistent with the July 27 Commitment Letter because it "specifically incorporate[d] the terms of the loan documents" and "permitted the Bank to decline to accept any of Plaintiff's proposed modifications to the loan documents."[38]

### 1.     The July 27 Commitment Letter is enforceable.

"It is by now hornbook law that 'the test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced."[39]  Under Pennsylvania law, an enforceable contract requires offer, acceptance, mutual assent, and consideration.[40]  The Bank argues its July 27 Commitment Letter is illusory, lacked consideration and is thus unenforceable.

"[A] promise to perform or forbear from performing must be supported by consideration. If the promise is entirely optional with the promisor, it is illusory, lacks consideration, and is unenforceable."[41]  Consideration is an "essential element of an enforceable contract."[42]  It

6

"consists of a benefit to the promisor or a detriment to the promise" which is bargained for "as the exchange for the promise."[43]   In other words, "the promise must induce the detriment and the detriment must induce the promise."[44]   The question of whether a contract is supported by consideration is one of law.[45]

The Bank argues its July 27 Commitment Letter is illusory because the parties agreed Developer was not "obligated to close if unsatisfied with the ultimate terms."[46]  We disagree.  As an initial matter, courts should "avoid constructions of contracts that would render promises illusory because such promises cannot serve as consideration for a contract."[47]  The presence of a duty to act in good faith is generally sufficient to avoid finding a promise illusory.[48]  Because both Pennsylvania and New Jersey imply a covenant of good faith and fair dealing in every contract, we find the implied duty sufficient to overcome the Bank's argument.[49]

There are additional reasons to not find the July 27 Commitment Letter illusory, particularly in a promise given for a promise.  First, in exchange for the Bank agreeing to offer the loan, Developer agreed to pay the Bank's attorney fee, approximately $9,250, regardless of whether the loan closed.[50]  Second, Developer signed the July 27 Commitment Letter and agreed to negotiate the Loan Documents.[51]  This agreement benefited the Bank wishing to loan the $4,000,000 and it benefited Developer to have the Bank move forward on the loan as it faced an impending balloon payment.[52]

We find evidence demonstrating the July 27 Commitment Letter is not illusory and consideration flowed both ways.  The July 27 Commitment Letter can be enforced if breached.

### 2.    The Bank did not breach the July 27 Commitment Letter.

To establish a breach of July 27 Commitment Letter under the agreed governing New Jersey law, Developer must show: (1) the existence of a valid contract; (2) failure of the Bank to

7

perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages.[53]

The Bank argues no breach occurred because its conduct is "wholly consistent" with the terms of the July 27 Commitment Letter.[54]  The Bank contends the July 27 Commitment Letter "specifically incorporate[d] the terms of the loan documents into the Commitment Letter and permitted the Bank to decline to accept any of Plaintiff's proposed modifications to the loan documents."[55]

The Commitment Letter reads:

The Bank's approval of the Loan is subject to the following terms and conditions and *such other requirements* as the Bank or its attorney may specify.  This letter's purpose is to provide *an outline of a proposed loan transaction* and *is not meant to address all issues, requirements, and or conditions* which will be fully addressed in the actual loan documentation.[56]

The parties further agreed the Loan Documents would be considered part of the Commitment Letter by incorporation:

The Bank's form of Note, Mortgage, Security Agreement and other standard form documents (as the same may be negotiated by the parties' counsel) shall be used in the Loan, and the terms thereof are incorporated herein by reference.[57]

The parties also agreed, apparently without substantial negotiation:

To the extent there is any conflict or inconsistency between, the provisions of this commitment and those contained in The Bank's form loan documents (as the same may be negotiated by the parties' counsel and approved by the Bank), the provisions of the latter shall prevail; provided, however, that is the loan documents do not address a particular issue and this commitment does, it is not to be construed as a conflict between this commitment and the loan documents.[58]

Developer never sought to challenge these terms.  While negotiating other terms in the July 27 Commitment Letter, it left open a gaping loophole: the Bank's Loan Documents are incorporated by reference into the July 27 Commitment Letter and the Loan Documents prevail. The July 27 Commitment Letter is an enforceable contract but by its very words does not

obligate the Bank to lend the $4 Million under the exact terms expressed in the July 27 Commitment Letter.

Developer, undisputedly a sophisticated commercial borrower represented by commercial counsel, must expect the Loan Documents contain provisions not detailed in the Commitment Letter. For example, Developer negotiated key language when its lawyer reserved the right to negotiate the Loan Documents:

> To the extent there is any conflict or inconsistency between the provisions of this commitment and those contained in The Bank's form loan documents *(as the same may be negotiated by the parties' counsel and approved by the Bank)* the provisions of the latter shall prevail.[59]

Developer thus wanted further negotiations as may be necessary. Developer attempts to escape this conclusion with a tortured reading: "even Defendant admits that the terms of the Commitment Letter were to survive the closing on the loan, and that the terms of the loan *had to be* "(as the same may be negotiated by the parties counsel)."[60] As a result, Developer argues the Bank's failure to change its forms to match the Commitment Letter is a breach of the Commitment Letter.[61] This interpretation defies logic. The parenthetical modifies the Bank's loan documents to be negotiated and approved by the Bank; it does not mandate the terms omitted in the July 27 Commitment Letter cannot be included in Loan Documents.

Unable to point to terms in the July 27 Commitment Letter itself which the Bank breached, Developer relies on the certification of its attorney, Mr. Zelitch. Mr. Zelitch certifies during phone calls he informed the Bank's counsel "it was extremely important that the list of Carveouts in the Commitment be complete as it was a very sensitive issue to Hampton and the Guarantor.[62] Mr. Zelitch further certifies he told the Bank "Hampton would not execute a Commitment without a full understanding of which Carveouts would be required."[63] He contends "[a]t no time did [Bank] state that the list of Carveouts was limited in any way, was

only a partial list, or was not a complete list of Carveouts. At no time did he indicate that the Carveouts would not consist of all Carveouts in the Bank's standard loan documents."[64]   The Bank's lawyer certifies: "At no time did I ever indicate or represent that the Bank's Loan Documents would not include the Bank's standard non-recourse exclusions[.]"[65]

New Jersey has a generally lenient view towards parol evidence.[66]   Under New Jersey law, extrinsic evidence is generally admissible for purposes of contract interpretation, but it is "not for the purpose of modifying or enlarging or curtailing its terms."[67]   In other words, "[s]o far as the evidence tends to show, not the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant."[68]

Developer is attempting to introduce its lawyer's statements not to interpret the July 27 Commitment Letter's terms, but rather to modify them to include a requirement the Loan Documents conform to the Commitment Letter. This is directly contrary to the language of the Commitment Letter itself and not relevant. We find no genuine issue of material fact remains on Developer's breach of the July 27 Commitment Letter.

**B.      Developer did not show a breach of the implied covenant of fair dealing.**

For the same reasons, we cannot find genuine issues of material fact precluding summary judgment for the Bank on the Developer's good faith and fair dealing claim. Neither party directly addresses the merits of the claim in their briefs.

Under New Jersey law, the implied covenant of good faith and fair dealing is "grounded in the fundamental principle that in every contract there is an implied covenant that neither party shall commit any act which shall destroy or injure the rights of the other party to enjoy the fruits of the contract."[69]   "Also, 'although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that

10

implied covenant even though that performance does not violate a pertinent express term.' "[70] Thus, the covenant of good faith and fair dealing requires a party "act in good faith when exercising discretion in performing its contractual obligations."[71]  A plaintiff seeking to hold a party liable for a breach of the covenant of good faith and fair dealing must evidence some "bad motive or intention" on the part of the defendant.[72]  But a claim alleging the breach of the implied covenant cannot be allowed to proceed "in the abstract and absent proper motive."[73]

Developer's breach of the implied covenant claim seeks to override an express term in the July 27 Commitment Letter.    It seeks to require the Loan Documents mirror the July 27 Commitment Letter.  The parties agreed to the opposite:  the Loan Documents govern regardless of the terms in the July 27 Commitment Letter.

## C.    Developer adduced no evidence of Bank's unlawful conduct under the New Jersey's Consumer Fraud Act.

To establish a claim under New Jersey's Consumer Fraud Act ("Act"), Developer must show: (1) unlawful conduct by the Bank; (2) it suffered an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss.[74]    The Act defines an "unlawful practice" broadly as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby....[75]

The Act is "liberally construed in favor of the consumer" and "applied broadly in order to accomplish its remedial purpose."[76]

The Bank argues it is entitled to summary judgment on this claim because Developer cannot satisfy any of the elements of the Act.  First, the Bank contends "there is no evidence of

11

any 'bait and switch' on which Plaintiff premises its [Act] claim."[77]  Second, the Bank argues

Developer did not suffer an ascertainable loss by walking away from a loan that was 25 basis

points below that offered by another lender.[78]  Finally, the Bank contends no causal nexus exists

between the offending conduct and the ascertainable loss.[79]

Developer does not cite evidence the Bank made an affirmative misrepresentation about

the non-recourse exclusions.  Developer's lawyer Zelitch certified:

> At no time did the Bank's lawyer state that the list of Carveouts was limited in
> any way, was only a partial list, or was not a complete list of Carveouts.  At no
> time did he indicate that the Carveouts would not consist of all Carveouts in the
> Bank's standard loan documents.[80]

Developer contends the Bank did not mention the Loan Documents contained non-recourse

provisions in addition to those in the Commitment Letter.  A plaintiff who alleges consumer

fraud based upon a defendant's omission "must show that the defendant acted with knowledge,

and intent is an essential element of the fraud."[81]

Even construed in the light most favorable to Developer, the Bank did not engage in

unlawful conduct under the Act.  When the parties signed the July 27 Commitment Letter, they

agreed it did not "address all issues, requirements, and or conditions" as those would be "fully

addressed in the actual loan documentation".[82]  Further, the July 27 Commitment Letter told

Developer the Loan Documents may differ from the July 27 Commitment Letter's terms and to

the extent they were inconsistent, the Loan Documents controlled.[83]  Developer even reserved its

right to negotiate the Loan Documents, which it exercised in full upon receipt of the Loan

Documents.[84]  In light of this evidence, the Bank cannot be said to have engaged in deceptive

behavior.  Possible bad business practice, but not deceptive behavior.  The July 27 Commitment

Letter fully disclosed the potential for inconsistency.  The July 27 Commitment Letter fully

disclosed the potential for additional terms to be added to the Loan Documents not previously

negotiated in the July 27 Commitment Letter.  And the Commitment Letter allowed Developer to negotiate the Loan Documents, which it did, albeit unsuccessfully.  Had Developer sought to hold the Bank to the terms of the Commitment Letter, it could have negotiated to make, at least the non-recourse exclusions, binding and controlling over the Loan Documents.  For example, it could have carved out the challenged  language by providing "to the extent not inconsistent with the Commitment Letter…"  Developer elected not do so and the Bank cannot now be liable for complying with the terms permitted by its July 27 Commitment Letter signed by Developer after negotiation.

### D. Developer cannot sustain a common law fraud claim.

The Bank moves for summary judgment on Developer's common law fraud claim.  The Bank first argues the claim is barred by the gist of the action doctrine as the fraud claim is nothing more than a breach of contract claim.  The Bank additionally argues Developer, as a matter of law, cannot establish a fraud claim.  We find the gist of the action doctrine does not bar the claim but there are no genuine issues of material fact precluding entering summary judgment for the Bank as a matter of law.

### 1.     Gist of the Action

The gist of the action doctrine exists "to maintain the conceptual distinction between breach of contract and tort claims."[85]  The doctrine prevents plaintiffs from recasting breach of contract claims as tort claims.[86]  "The critical conceptual distinction between a breach of contract claim and a tort claim is that the former arises out of 'breaches of duties imposed by mutual consensus agreements between particular individuals,' while the latter arises out of 'breaches of duties imposed by law as a matter of social policy.'"[87]

The Bank argues the "gist of the action" doctrine bars Developer's fraud claim. It contends the claim "flows directly from the contention that the Bank breached the Commitment Letter by failing to modify the loan documents."[88] Developer argues the claim is not barred by the gist of the action under the Pennsylvania Superior Court's decision in *Sullivan v. Chartwell Inv. Partners, LP.*[89] In *Sullivan*, the Superior Court held a fraud claim, premised on a promise to perform obligations the party never intended to perform so as to induce the other party to agree to the contract was not barred by the gist of the action doctrine.[90] It found these tort claims related to the inducement of the contract and were "collateral to the performance of the contracts" and thus not within the grasp of the doctrine.[91]

The Developer's fraud claim is not barred by the gist of the action doctrine. Developer contends fraud in the inducement: the Bank induced it to sign the July 27 Commitment Letter thinking it contained all of the "carveouts" or non-recourse exclusions and no more would be included in the Loan Documents. This alleged fraudulent activity is collateral to the performance of the contract itself.

We recognize the somewhat inconsistent approaches by Pennsylvania state courts and federal courts in this District when applying the gist of the action doctrine to fraudulent inducement claims.[92] In *Vives*, Judge Dalzell thoughtfully noted Pennsylvania courts appeared more willing to except all fraudulent inducement claims from the gist of the action doctrine, including those predicated on a party's intent to perform.[93] Yet, he decided this approach did "not accord well with the measured tones of *eToll*" and, following decisions from this Circuit, he concluded "the Pennsylvania Supreme Court would likely hold fraudulent inducement claims based upon a party's alleged misrepresentation as to its intent to perform are barred by the gist of the action doctrine."[94]

14

But *Vives* and its reasoning are not applicable here because the misrepresentation there "concern[ed] duties later incorporated into a contract."[95] This reasoning makes sense when the misrepresentations are incorporated into the contract and a party's intent not to perform as a fraud claim necessarily duplicates a contract claim.[96] Here, Developer's fraudulent inducement claim does not concern duties incorporated into the July 27 Commitment Letter. Rather, it concerns conduct collateral to the terms of the Commitment Letter: the Bank would not include additional "carveouts" or non-recourse exclusions. We do not apply the gist of the action doctrine to these facts.

### 2. The Bank is entitled to summary judgment on the fraud claim.

Even construing all facts in the light most favorable to Developer, the Bank is entitled to summary judgment on this common law fraud claim. To succeed on a fraud claim, Developer must show: (1) a representation; (2) material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury proximately caused by the reliance.[97]

Developer fails at the first step. It alleges "Kearny represented and promised to Developers that it would provide a non-recourse mortgage refinancing loan with only certain Agreed Upon Exclusions to the non-recourse provisions of the Note and Guaranty."[98] We are now at summary judgment and it is "essentially put up or shut up time for the non-moving party[.]"[99] Developer failed to point to evidence demonstrating the Bank represented the Loan Documents would contain only the non-recourse exclusions contained in the Commitment Letter. Developer admits the Bank, through its lender, never made any such representation.[100] It is also hard to imagine, let alone find supporting evidence, demonstrating the Developer could have

15

justifiably relied upon any certifications or statements made by the Bank when the written and negotiated Commitment Letter specifically told the Developer the later loan documents would govern the transaction. It is hard to imagine a misrepresentation when the documents tell the recipient of the alleged misrepresentation not to rely upon any statement other than a later loan document. Further, Developer has not shown us after discovery any basis for it to ignore the specific provisions in the Commitment Letter concerning the governing loan documents. We must grant summary judgment in favor of the Bank on this common law fraud claim.

### E. Unjust Enrichment

"[T]he doctrine of unjust enrichment contemplates that a person who has been unjustly enriched at the expense of another must make restitution to the other."[101]  To establish an unjust enrichment claim, Developer must demonstrate (1) it conferred a benefit on the Bank; (2) the Bank appreciated the benefit; and (3) the Bank retained the benefit under such circumstances when it would be inequitable or unjust to retain the benefit without payment.[102]

A plaintiff cannot sustain an unjust enrichment claim when there is an enforceable contract between the parties.[103]  Because we found the July 27 Commitment Letter is an enforceable contract, no unjust enrichment claim can be sustained.  We grant summary judgment in favor of the Bank on this claim.

### III.   CONCLUSION

We grant the Bank summary judgment on all of Defendant's claims in the accompanying Order.  Developer adduced no evidence demonstrating a genuine issue of material fact as to whether the Bank breached the enforceable July 27 Commitment Letter.  The Bank did not engage in unlawful conduct barred by the Act or misrepresent a material fact regarding the

16

transaction causing justifiable reliance.  Since we find the Commitment Letter is an enforceable contract, Developer's unjust enrichment claim fails.

---

[1] The Court's Policies require parties file a Statement of Undisputed Material Facts ("SUMF") in support of a Fed.R.Civ.P. 56 motion, as well as an appendix of exhibits or affidavits. Defendant filed its SUMF at ECF Doc. No. 27-2 ("Def.'s SUMF"). Plaintiff responded to the Defendant's SUMF at ECF Doc. No. 29-2, referred to as "Pl.'s SUMF."  Plaintiff added documents to the Appendix at ECF Doc. No. 29-3. References to exhibits in the appendices shall be referred to by Bates number, for example, "Appendix (A.) 1."

[2] (*Id.* at ¶¶ 1-4.)

[3] (Def.'s SUMF, at ¶¶ 5-6.)

[4] (*Id.* at ¶ 6.)

[5] (*Id.*)

[6] (*Id.* at 12; A. at 64a.)

[7] (A. at 70a.)

[8] (A. at 76a, 83a.)

[9] (A. at 169a, 179a-180a.)

[10] (*Id.*)

[11] (*Id.* at 177a.)

[12] (*Id.*)

[13] (*Id.*)

[14] (A. at 181a.)

[15] (Def.'s SUMF ¶¶ 34-35; Pl.'s SUMF ¶¶ 34-35; A. at 193a-194a, 248a-250a.)

[16] (*Id.* at 201a.)

[17] (*Id.*)

[18] (*Id.* at 249a.)

[19] (*Id.*)

[20] (*Id.*)

[21] (*Id.*)

[22] (*Id.* at 249a-250a.)

[23] (*Id.* at 250a.)

[24] (Def.'s SUMF ¶ 38, Pl.'s SUMF ¶ 38; A. at 288a-290a.)

[25] (A. at 351a.) (emphasis in original).

[26] (*Id.*)

[27] (*Id.* at 390a-391a.)

[28] (*Id.* at 411a.)

[29] (*Id.* at 414a.)

[30] (*Id.*)

[31] (*Id.* at 418a.)

[32] (Def.'s SUMF ¶ 52; Pl.'s SUMF ¶ 52.)

[33] (Def.'s SUMF ¶ 53; Pl.'s SUMF ¶ 53.)

[34] (Def.'s SUMF ¶¶ 54-55; Pl.'s SUMF ¶¶ 54-55.)

[35] Developer voluntarily dismissed a breach of fiduciary duty claim.  (ECF Doc. No. 14).

[36] (ECF Doc. No. 27-1, at 8-10.)

[37] (*Id.* at 10-12.)

[38] (*Id.* at 11.)

[39] *ATACS Corp. v. Trans World Comm'ns, Inc.*, 155 F.3d 659, 665 (3d Cir. 1998) (applying Pennsylvania law). Both the Bank and Developer cite Pennsylvania law as applying to whether the July 27 Commitment Letter is enforceable.

[40] *Id.* at 665; *Yarnall v. Almy*, 703 A.2d 535, 539 (Pa. Super. 1997).

[41] *Lackner v. Glosser*, 892 A.2d 21, 31 (Pa. Super. 2006).

[42] *Stelmack v. Glen Alden Coal Co.*, 14 A.2d 127, 128 (Pa. 1940).

[43] *Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pa.*, 895 A.2d 595, 600 (Pa. Super. 2006).

[44] *Id.* at 601 (citation omitted).

[45] *Id.* (citation omitted).

[46] (ECF Doc. No. 27-1, at 10.)

[47] *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 936 (2015).

[48] *A.P. ex rel. Phinisee v. United States*, 556 F. App'x 132, 136 (3d Cir. 2014) (citing *In re Cendant Corp. Litig.*, 264 F.3d 286, 300 (3d Cir. 2001)).

[49] *See Wood v. New Jersey Mfrs. Ins. Co.*, 21 A.3d 1131, 1140 (N.J. 2011) ("We recently re-emphasized that "every contract in New Jersey contains an implied covenant of good faith and fair dealing . . . ."); *Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. 1992) ("The general duty of good faith and fair dealing in the performance of a contract . . . has been adopted in this Commonwealth . . . .").

[50] (A. at 173a.)

[51] (*Id.* at 177a, 180a.)

[52] *See Channel Home Ctrs v. Grossman*, 795 F.2d 291, 300 (3d Cir. 1986).

[53] *Sheet Metal Workers Intern. Ass'n Local Union No. 27, AFL–CIO v. E.P. Donnelly, Inc.,* 737 F.3d 879, 900 (3d Cir.2013) (citing *Coyle v. Englander's,* 488 A.2d 1083, 1088 (N.J. Super. App. Div. 1985)). Because we decide the July 27 Commitment Letter is an enforceable contract, we apply its choice of law: "The terms and provisions contained herein shall be construed in accordance with the laws of the State of New Jersey." (A. at 177a.)

[54] (ECF Doc. No. 27-1, at 10-12)

[55] (*Id.* at 11.)

[56] (A. at 163a. (emphasis added).)

[57] (A. at 178a.)

[58] (*Id.*)

[59] (*Id.* at 177a.)

[60] (ECF Doc. No. 29-1, at 13.)

[61] *Id.*

[62] (PL.'s SUMF, ¶ 60.)

[63] (*Id.* at ¶ 62.)

[64] (*Id.* at ¶ 64.)

[65] (ECF Doc. No. 27-3, at ¶ 10.)

[66] *See Conway v. 287 Corporate Ctr. Assocs.*, 901 A.2d 341, 346-47 (N.J. 2006) ("In sum, we permit a broad use of extrinsic evidence to achieve the ultimate goal of discovering the intent of the parties.")

[67] *Id.*

[68] *Atl. N. Airlines v. Schwimmer*, 96 A.2d 652, 656 (N.J. 1953).

[69] *Edwards v. Prudential Prop. & Cas. Co.*, 814 A.2d 1115, 1120 (N.J. Super. Ct. App. Div. 2003) (citing *R.J. Gaydos Ins. Agency, Inc. v. National Consumer Ins. Co.*, 773 A.2d 1132 (N.J. 2001)).

[70] *Id.* (quoting *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001)).

[71] *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1077 (N.J. Super. Ct. App. Div. 2002) (citation omitted).

[72] *Interstate Realty Co., LLC v. Sears, Roebuck & Co.*, No. 06-5997, 2009 WL 1286209, *11 (D.N.J. Apr. 27, 2009) (citing *Wilson*, 773 A.2d at 1130)).

[73] *Wilson*, 773 A.2d at 1130; *Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 329 (3d Cir. 2006) (applying New Jersey law).

[74] *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009) (citation omitted).

[75] N.J. Stat. Ann. § 56:8-2; *Prof'l Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc.*, 245 F. App'x 161, 165 (3d Cir. 2007).

[76] The Bank does not contest Developer's status as a "consumer" or the ACT's applicability to the instant transaction.   Accordingly, we assume, without deciding, Developer is a consumer under the ACT and the ACT, in fact, applies to the present mortgage transaction. *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 435-36 (D.N.J. 2012) (citations omitted).

[77] (ECF Doc. No. 27-1, at 13.)

[78] (*Id.* at 14-15.)

[79] (*Id.* at 15-16.)

[80] (Pl.'s SUMF, ¶ 64.)

[81] *Bosland v. Warnock Dodge, Inc.* 964 A.2d 741, 749 (N.J. 2009).

[82] (A. at 163a.)

[83] (*Id.* at 177a.)

[84] (*Id.* at 201a.)

[85] *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002).

[86] *Erie Ins. Exch. v. Abbott Furnace Co.*, 972 A.2d 1232, 1238 (Pa. Super.  2009).

[87] *Id.* (quoting *Reardon v. Allegheny Coll.*, 926 A.2d 477, 486-87 (Pa. Super. 2007)).

[88] (ECF Doc. No. 27-1, at 17)

[89] *Sullivan,* 873 A.2d 710, 719 (Pa. Super. 2005)

[90] *Id.*

[91] *Id.*

[92] *Vives v. Rodriguez*, 849 F. Supp. 2d 507, 517-22 (E.D. Pa. 2012) (thoroughly detailing application of doctrine by state courts and federal courts in this Circuit).

[93] *Id.*

[94] *Id.* at 521-22.

[95] *Id.* at 520.

[96] *Id.* at 521.

[97] *Weston v. Northampton Personal Care, Inc.*, 62 A.3d 947, 1019 (Pa. Super. 2013) (citing *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999)).

[98] (ECF Doc. No. 1-1, at ¶ 41)

[99] *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citation omitted).

[100] (Pl.'s SUMF, ¶ 64)

[101] *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) (citation and internal quotation omitted).

[102] *See Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. 1993) (citation omitted). We cite Pennsylvania law because where there is no conflict between two jurisdictions' laws, the court will apply the law of the forum. *See Hammersmith v. TIG Ins. Co.* 480 F.3d 220, 229 (3d Cir. 2007). We find no difference between Pennsylvania's and New Jersey's treatment of an unjust enrichment claim. *See Castro v. NYT Television*, 851 A.2d 88, 98 (N.J. Super. Ct. App. Div. 2004) ("To establish unjust enrichment as a basis for quasi-contractual liability, a plaintiff must show both that defendant received a benefit and that retention of the benefit would be unjust." (internal quotation omitted)).

[103] *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733-34 (D.N.J. 2008) (citing *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 334 (N.J. Super. Ct. App. Div. 1966)).